UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATTHEW ELLIS, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § § | Civil Action No. 4:14-cv-3343 |
| v. | § § § | |
| BRYAN F. BULAWA, WILLIAM ORDEMANN, ROBERT D. SANDERS, MICHAEL C. SMITH, GREGORY C. KING, D. MARK LELAND, THOMAS M. HART III, OILTANKING PARTNERS, L.P., OTLP GP LLC, ENTERPRISE PRODUCTS PARTNERS L.P., ENTERPRISE PRODUCTS HOLDINGS LLC, ENTERPRISE PRODUCTS OPERATING LLC and EPOT MERGERCO LLC, | § § § § § § § § § § § § | |
| Defendants. | § | |

## CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY

Plaintiff Matthew Ellis ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on personal knowledge, as follows:

## NATURE OF THE CASE

1.  Plaintiff brings this class action on behalf of the unitholders of partnership units of Oiltanking Partners, L.P. ("Oiltanking" or the "Partnership") against the members of the Board of Directors (the "Board" or the "Individual Defendants") of OTLP GP LLC ("OTLP"), Oiltanking's general partner, for their breaches of fiduciary duties arising out of their attempt to sell the Partnership to Enterprise Products Partners L.P. ("Enterprise") and Enterprise Products Holdings LLC ("Enterprise Products"), the general partner of Enterprise, through Enterprise's

wholly owned subsidiary EPOT MergerCo LLC ("MergerCo") by means of an unfair process and for an unfair price.

2.      On November 12, 2014, Enterprise and the Partnership announced that they had entered into an agreement that will culminate in Enterprise, through MergerCo, acquiring all of the outstanding units of Oiltanking in a unit-for-unit transaction. Oiltanking unitholders will receive 1.3 common units of Enterprise for each unit of Oiltanking they own (the "Merger"). Based on the closing prices of Oiltanking and Enterprise on November 11, 2014, the last trading prior to the announcement of the Merger, the implied value of the total consideration that the Partnership's unitholders will receive is approximately $49.05 per unit, or a total transaction price of approximately $1.4 billion.  The proposed consideration represents a meager 3.6% premium to the average closing price of Oiltanking units over the six months leading up to the announcement of the Merger of $47.33.  Following the Merger, Oiltanking's public unitholders will own only 1.87% of the combined entity.

3.      The Merger is the culmination of a series of transactions meant to transfer Oiltanking's assets to Enterprise without paying Oiltanking's public unitholders a fair price.  On October 1, 2014, the Partnership and Enterprise announced that Enterprise had acquired Oiltanking Holding Americas, Inc.'s 64.7% limited partner interest in the Partnership, composed of 15,899,802 common units and 38,899,802 subordinated units, as well as its 2% general partner interest in the Partnership (the "Preliminary Transaction").  Following the Preliminary Transaction, Enterprise transferred the acquired units to Enterprise Products Operating LLC ("EPO"), a wholly owned subsidiary of Enterprise. Accordingly, following the Preliminary Transaction, Enterprise held 66.7% of the limited partnership interest in Oiltanking.  In conjunction with the Preliminary Transaction, four representatives of Enterprise, Bryan F.

Bulawa, ("Bulawa"), William Ordemann ("Ordemann"), Robert D. Sanders ("Sanders"), and Michael C. Smitch ("Smith"), were elected as members of the Board of Directors of OTLP. Also on October 1, Enterprise delivered a letter to OTLP proposing a merger of Enterprise and Oiltanking at an exchange ratio of 1.23 Enterprise common units for each outstanding Partnership common unit. Then, on October 6, OTLP announced that Laurie H. Argo ("Argo"), a Vice President of Enterprise, had been appointed OTLP's President and Chief Executive Officer. Given Enterprise's complete control over the Partnership, the inadequate consideration offered in connection with the Merger is unsurprising.

4. The Board has breached its fiduciary duties by agreeing to the Merger for grossly inadequate consideration. As described in more detail below, given Oiltanking's recent strong performance as well as its future growth prospects, the proposed consideration unitholders will receive is inadequate and undervalues the Partnership.

5. Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Merger with deal protection devices that preclude other bidders from making a successful competing offer for the Partnership. Specifically, pursuant to the merger agreement dated November 11, 2014 (the "Merger Agreement"), Defendants agreed to: (i) a strict no-solicitation provision that requires the Partnership to terminate any ongoing discussions with other potential acquirers and from pursuing any alternatives to the Merger and (ii) a provision that provides the Buyout Group with six (6) business days to match any competing proposal that might arise.

6. The Individual Defendants have breached their fiduciary duties of loyalty and due care, and Enterprise, Enterprise Products, EPO, and MergerCo have aided and abetted such breaches by Oiltanking's officers and directors. Plaintiff seeks to enjoin the Merger unless and until Defendants cure their breaches of fiduciary duty.

3

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction), as Plaintiff is a citizen of Oklahoma and no defendant is a resident of Oklahoma.

8. The Court has personal jurisdiction over each of the Defendants because each either is organized under the laws of, conducts business in and maintains operations in this District, or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

**PARTIES**

10. Plaintiff is, and has been at all relevant times, the owner of units of Oiltanking. Plaintiff is a citizen of Oklahoma.

11. Oiltanking is a limited partnership organized and existing under the laws of the State of Delaware. It maintains its principal executive offices at 333 Clay Street, Suite 2400, Houston, Texas, 77002.

12. Defendant OTLP GP LLC ("OTLP") is the general partner of the Partnership. Importantly, as is common among publicly traded limited partnerships, the Partnership is managed by OTLP's directors and officers. OTLP is a Delaware limited liability company.

13. Defendant Bryan Bulawa ("Bulawa") has been a director of OTLP since October 1, 2014, and is the Chairman of the Board. Bulawa is a citizen of Texas.

14. Defendant William Ordemann ("Ordemann") has been a director of OTLP since October 1, 2014. Ordemann is a citizen of Texas.

15. Defendant Robert D. Sanders ("Sanders") has been a director of OTLP since October 1, 2014. Sanders is a citizen of Texas.

16. Defendant Michael C. Smith ("Smith") has been a director of OTLP since October 1, 2014. Smith is a citizen of Texas.

17. Defendant Gregory C. King ("King") has been a director of OTLP since 2011. King is the chairman of the Board's Conflicts Committee. King is a citizen of Texas.

18. Defendant D. Mark Leland ("Leland") has been a director of OTLP since May 2012. Leland is a member of the Board's Conflicts Committee. Leland is a citizen of Texas.

19. Defendant Thomas M. Hart III ("Hart") has been a director of OTLP since February 2014. Hart is a member of the Board's Conflicts Committee. Hart is a citizen of Texas.

20. Defendants Bulawa, Ordemann, Sanders, Smith, King, Leland, and Hart are collectively referred to herein as the "Individual Defendants" or "the Board."

21. Defendant Enterprise is a limited partnership organized and existing under the laws of the State of Delaware. It maintains its principal executive offices at 1100 Louisiana Street, 10th Floor, Houston, Texas, 77002.

22. Defendant Enterprise Products is a Delaware limited liability company and the general partner of Enterprise.

23. Defendant EPO is a Delaware limited liability company and a wholly owned subsidiary of Enterprise.

5

24. Defendant MegerCo is a Delaware limited liability company and a wholly owned subsidiary of Enterprise that was created for the purpose of effecting the Merger.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons that own Oiltanking units (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Partnership's most recent Form 10-Q, which it filed with the SEC on November 6, 2014, as of November 3, 2014, approximately 44.2 million common units and 38.9 million subordinated units were represented by the Partnership as outstanding. All members of the Class may be identified from records maintained by Oiltanking or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

27. Questions of law and fact are common to the Class, including:

   (i) Whether the Individual Defendants breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Merger;

   (ii) Whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonably possible under the circumstances for

6

     the benefit of Plaintiff and the other members of the Class in connection with the Merger;

 (iii) Whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Partnership or its assets;

 (iv) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated;

 (v) Whether Enterprise, Enterprise Products, EPO, and MergerCo aided and abetted the Individual Defendants' breaches of fiduciary duty; and

 (vi) Whether the Class is entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

28. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

29. Plaintiff will fairly and adequately protect the interests of the Class and have no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

30. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class, and conflicting adjudications for individual members of the Class might, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Moreover, Defendants have acted or

refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

*Partnership Background and Its Poise for Growth*

31. Oiltanking was formed by Oiltanking Holding Americas, Inc. in 2011 to engage in the independent terminaling, storage, and transportation of crude oil, refined pretroleum products, and liquefied petroleum gas. Oiltanking owns and operates terminaling and storage assets located along the United States Gulf Coast on the Houston Ship Channel and in Beaumont, Texas.

32. Oiltanking's business has been expanding rapidly. On February 24, 2014, the Partnership issued a press release disclosing the Partnership's superlative financial results for the fourth quarter and full year 2013. The press release read, in part, as follows:

> **HOUSTON — February 24, 2014 — Oiltanking Partners, L.P. (NYSE: OILT)** (the "Partnership") today reported fourth quarter 2013 net income of $34.5 million, or $0.69 per common unit, ***an increase of 127% over fourth quarter 2012 net income*** of $15.2 million, or $0.30 per unit. Net income for the full year of 2013 increased 87% to $117.1 million, or $2.45 per common unit, compared to net income for the full year of 2012 of $62.6 million, or $1.57 per unit.
>
> Adjusted EBITDA increased 113% to $42.2 million for the fourth quarter of 2013, compared to $19.8 million for the fourth quarter of 2012. Adjusted EBITDA for the year 2013 ***increased 80% to $145.3 million compared to $80.6 million for 2012***. Adjusted EBITDA, which is a financial measure not presented in accordance with U.S. generally accepted accounting principles ("GAAP"), is defined and reconciled to net income in the financial tables below.
>
> "The fourth quarter capped ***a year of records and milestones for the Partnership***," said Anne-Marie Ainsworth, President and Chief Executive Officer of the Partnership's general partner. "In addition to across-the-board record results for revenues, net income, adjusted EBITDA and distributable cash flow, ***we successfully achieved key operational milestones last year by increasing our storage capacity by 23% and exceeding one million barrels of throughput per day***."

8

> ***The Partnership's revenues increased by approximately $26.1 million, or 77%, to $60.2 million during the fourth quarter of 2013*** compared to the same period in 2012, due to higher storage service fee revenues, throughput fee revenues and ancillary service fee revenues. Storage service fee revenue grew by $9.0 million due to new storage capacity of approximately 4.1 million barrels placed into service throughout 2013 and, to a lesser extent, higher contract rates. Throughput fee revenues grew by $15.3 million during the fourth quarter of 2013 due, in large part, to an increase in fees related to liquefied petroleum gas ("LPG") exports at our Houston terminal and, to a lesser extent, fees generated on pipelines placed into service in the first quarter of 2013. A significant proportion of the increase in throughput fees was attributable to amounts we received under a margin sharing arrangement with our customer; the margin sharing fees received were in addition to the volume-based throughput fees we earned under that arrangement.

(Emphasis added.)

33.     Oiltanking continued its success in the first quarter of 2014. In a press release issued on April 30, 2014, the Partnership reported "net income of $33.3 million, or $0.63 per unit, an increase of 65% over first quarter 2013 net income of $20.2 million, or $0.48 per unit." Further, "[a]djusted EBITDA increased 57% to $40.4 million for the first quarter of 2014, compared to $25.7 million for the first quarter of 2013." Moreover, "[t]he Partnership's revenues increased by approximately $19.8 million, or 49%, to $60.0 million during the first quarter of 2014 compared to the same period in 2013, due to higher storage service fee revenues, throughput fee revenues and ancillary service fee revenues." Ken Owen ("Owen"), then the Partnership's President and Chief Executive Officer, was quoted, saying, "The Partnership is off to a great start in 2014[.]" Specifically, "[the Partnership] achieved record storage service fees this quarter and successfully completed [its] 3.2 million barrel Appelt I project by delivering the final customer tank early this year." These operational successes translated into growth in the Partnership's service fee revenue of $6.1 million, "due to new storage capacity of approximately 4.1 million barrels placed into service throughout 2013 and 210,000 barrels placed into service in January 2014 . . . ."

9

34. The second quarter of 2014 saw similar growth for the Partnership. On August 6, 2014, the Partnership issued a press release announcing its financial results for the second quarter. Oiltanking achieved net income during the quarter of "$42.3 million, or $0.37 per unit, an increase of 43.3% over second quarter 2013 net income of $29.5 million, or $0.31 per unit." In addition, the Partnership's adjusted EBITDA "increased 34.2% to $48.8 million for the second quarter of 2014, compared to $36.4 million for the second quarter of 2013." Further, the Partnership increased its revenues "by approximately $17.0 million, or 32.6%, to $69.1 million during the second quarter of 2014 compared to the same period in 2013, due to higher storage service fee revenues, throughput fee revenues and ancillary service fee revenues."

35. In an analyst call discussing the second quarter results on August 7, 2014, Owen stated, "Second quarter of 2014 was another record quarter for the Partnership, both financially and operationally." Specifically, Owen announced that the Partnership's Houston operating unit had the first, third, and fourth highest throughput months in its history during the second quarter of 2014. These records were achieved despite operational issues that impacted volumes. Addressing improvements to the Partnership's assets, Owen stated the Partnership was making progress on its 24-inch and 36-inch crossroads pipelines, which were proceeding on-time and on-budget, and the Partnership was moving forward on a dock expansion project that is expected to be completed at the end of 2014.

36. The Partnership's strong financial performance and prospects for the future translated into increases in price for Oiltanking units. Indeed, on September 10, 2014, the Partnership's units closed at $53.89 per unit on the New York Stock Exchange—an all-time high—nearly four and one half times the Partnership's IPO price in 2011 of $12 per unit. The

following chart illustrates the Partnership's market performance over the year leading up to the announcement of the Merger:



37.     Moreover, the Partnership has made significant distributions to its unitholders this year. On January 21, 2014, the Partnership declared an increase to its quarterly cash distribution to $0.47 per unit. Then, on April 21, 2014, the Partnership declared an increase to its quarterly cash distribution to $0.495 per unit. Finally, on July 21, 2014, the Partnership declared another increase to its quarterly cash distribution to $0.26 (the Partnership effected a 2-for-1 unit split on July 14, 2014). As of November 19, 2014, Oiltanking's dividends represent a 2.21% yield.

*Enterprise Begins Its Pursuit of a Merger with Oiltanking*

38.     On October 1, 2014, the Partnership announced that Oiltanking Holding Americas, Inc. had sold to Enterprise its 64.7% limited partner interest in the Partnership, consisting of 15,899,802 common units and 38,899,802 subordinated units, along with its 2% general partner interest in the Partnership. Enterprise then transferred the acquired units to EPO, a wholly owned subsidiary of Enterprise. Accordingly, following the Preliminary Transaction, Enterprise controls 66.7% of the Partnership's limited partner interest. In conjunction with the

11

Preliminary Transaction, Bulawa, Ordemann, Sanders, and Smith, each of whom is affiliated with Enterprise, were elected to the OTLP board. As a result of the appointment of Bulawa, Ordemann, Sanders, and Smith, Enterprise controlled a majority of the Board.

39. Also, on October 1, 2014, as disclosed in a Form 8-K filed with the SEC on the same day, Enterprise "delivered a letter to the Chairman of the Conflicts Committee . . . of the general partner of [the Partnership]" proposing a merger between Enterprise and Oiltanking. Enterprise proposed a unit-for-unit merger at an exchange ratio of 1.23 Enterprise common units per Oiltanking unit. As of September 30, 2014, the day before the announcement of the Preliminary Transaction, Enterprise's proposed merger would have represented a *negative premium* to Oiltanking's then-current market price.

40. Then, on October 6, 2014, the Partnership announced that Argo had been appointed President and Chief Executive Officer of OTLP. As stated above, Argo was a Vice President of Enterprise. As stated in the Form 8-K filed with the SEC on October 6 in connection with Argo's appointment, Argo was employed by Enterprise from 2005 through 2014.

41. Through the Preliminary Transaction and the subsequent appointments of Enterprise affiliates to OTLP's Board and senior management, Enterprise has foreclosed the possibility of Oiltanking continuing independent of Enterprise or being acquired by some other entity that will pay the Partnership's public unitholders the fair value of their units.

*The Board Breaches Its Fiduciary Duty by Entering into the Merger for Consideration that Undervalues the Partnership and Fails to Maximize Unitholder Value*

42. In a press release dated November 12, 2014, the Partnership announced that it had entered into the Merger Agreement, pursuant to which Enterprise will acquire all of the outstanding Partnership units for 1.3 units of Enterprise. The total consideration unitholders will

receive, based on Enterprise's closing unit price on November 11, 2014, which was the last trading day prior to the announcement of the Merger, would be $49.05 per unit. Additionally, the Board failed to negotiate a "collar" to protect the consideration offered in the form of units from any sudden sharp movements in the price of Enterprise's units prior to the consummation of the Merger.

43. Given the Partnership's recent strong performance and its positioning for growth, the Merger consideration is inadequate and significantly undervalues the Partnership.

44. The proposed consideration represents a meager 3.6% premium to the average closing price of Oiltanking units over the six months leading up to the announcement of the Merger of $47.33.

45. Further, of nine analysts reported by Yahoo! Finance, the mean price target for Oiltanking's units is $51.44 and the median is $52.00. The high price target is $61.00 per unit.

46. Moreover, the Merger consideration fails to adequately compensate Oiltanking's unitholders for the significant synergies created by the Merger. The Partnership's November 12, 2014 press release announcing the Merger quoted Enterprise's CEO Michael Creel: "The combination of Enterpise's system of midstream assets and Oiltanking Partners' access to waterborne markets and crude oil and petroleum products storage assets would extend and broaden Enterprise's midstream energy services business."

47. Despite the significant synergies inherent in the transaction for Enterprise, the Board failed to secure a fair price for either the intrinsic value of the Partnership's assets or the value of the Partnership's assets to Enterprise.

48. In addition, as disclosed in the Form 8-K filed with the SEC in connection with the announcement of the Merger, the Partnership has entered into a support agreement with

13

Enterprise and EPO. Under the support agreement, EPO agreed to vote its Partnership common units in favor of the Merger at any meeting of Partnership unitholders. In addition, "EPO granted an irrevocable proxy to a member of the Conflicts Committee to vote such units accordingly."

49. Finally, following the Merger, Oiltanking's public unitholders will own only 1.87% of the combined entity.

50. Enterprise is seeking to acquire the Partnership at the most opportune time, at a time when the Partnership is performing very well and is positioned for tremendous growth.

*The Preclusive Deal Protection Devices*

51. In addition, as part of the Merger Agreement, Defendants agreed to certain deal protection devices that operate conjunctively to lock-up the Merger and ensure that no competing offers will emerge for the Partnership.

52. Section 6.6 of the Merger Agreement includes a "no solicitation" provision barring the Partnership from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by the Buyout Group. Section 6.6(a) demands that the Partnership terminate any and all prior or on-going discussions with other potential acquirers.

53. Pursuant to §6.6(b) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Partnership must notify Enterprise of the bidder's identity and the terms of the bidder's offer. Thereafter, § 6.6(d) demands that should the Board determine to enter into a superior competing proposal, it must grant Enterprise six business days in which the Partnership must negotiate in good faith with Enterprise (if Enterprise so desires) and allow Enterprise to amend the terms of the Merger Agreement to make a counter-offer so that any competing proposal no longer constitutes a "Superior Proposal."

54.     In other words, the Merger Agreement allows Enterprise access to any rival bidder's information and allows Enterprise a free right to top any superior offer simply by matching it.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Enterprise, which can piggy-back on the due diligence of the foreclosed second bidder.

55.     Moreover, as stated above, in connection with the Merger, 66.7% of the Partnership's outstanding common units are already "locked-up" in favor of the Merger.

56.     Ultimately, these preclusive deal-protection provisions illegally restrain the Partnership's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Partnership.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative Merger that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

57.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff and the Class Against the Individual Defendants for Breach of Fiduciary Duties

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care and loyalty owed to the unitholders of Oiltanking and have acted to put their personal interests, and the interests of Enterprise, ahead of the interests of Oiltanking unitholders.

60. The Individual Defendants' recommendation of the Merger will result in change of control of the Partnership, with Partnerships' public unitholders owning only 1.87% of the surviving entity, which imposes heightened fiduciary responsibilities to maximize Oiltanking's value for the benefit of the unitholders and requires enhanced scrutiny by the Court.

61. The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the unitholders of Oiltanking because, among other reasons:

(a) they failed to take steps to maximize the value of Oiltanking to its public unitholders and agree to an exchange ratio reflecting that value, and instead took steps to avoid competitive bidding;

(b) they failed to properly value Oiltanking; and

(c) they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Merger.

62. As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Oiltanking's assets and will be prevented from benefiting from a value-maximizing transaction.

63. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Merger, to the irreparable harm of the Class.

64. Plaintiff and the Class have no adequate remedy at law.

# COUNT II

## On Behalf of Plaintiff and the Class Against Enterprise, Enterprise Products EPO and MergerCo for Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duty

65. Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

66. Enterprise, Enterprise Products, EPO, and MergerCo have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Oiltanking unitholders, and have participated in such breaches of fiduciary duties.

67. Enterprise, Enterprise Products, EPO, and MergerCo knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing Enterprise, Enterprise Products, EPO, and MergerCo rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Merger in breach of their fiduciary duties

68. Plaintiff and the Class have no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A) Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B) Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Merger; unless or until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for unitholders.

(C) In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(D) Directing Defendants to account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E) Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F) Granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

DATED: November 20, 2014.

Respectfully submitted,

/s/ Thomas E. Bilek
Thomas E. Bilek
TX Bar 02313525 / SDTX Bar 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX 77002
(713) 227-7720

*Counsel for Plaintiff*

**OF COUNSEL:**

Shane T. Rowley
**LEVI & KORSINSKY, LLP**
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500

Vincent Wong
**THE LAW OFFICES OF VINCENT WONG**
39 East Broadway, Suite 304
New York, NY 10002
Tel: (212) 425-1140